NEWARK MILK AND CREAM COMPANY, a corporation, et al., complainants,

*v.*

MILK DRIVERS AND DAIRY EMPLOYEES LOCAL No. 680, OF NEWARK, A. F. OF L., et al., defendants.

[Decided March 27th, 1941.]

*Messrs. McCarter, English & Egner* and *Mr. Leonard J. Emmerglick,* for the complainants.

*Mr. Thomas J. Markey,* for the Independent Union of Dairy Employees.

*Mr. Thomas L. Parsonnet,* for the defendants.

STEIN, V. C.

On March 1st, 1941, complainants Newark Milk and Cream Company, as employer, and six of its employees, presented their bill of complaint with affidavits annexed naming as defendants Milk Drivers and Dairy Employees Local No. 680, of Newark, A. F. of L., two of its officers and two others not connected with the complainants but who have been engaged in picketing activities as hereinafter outlined.

The allegations of the bill of complaint supported by proof established that the corporate complainant is engaged in the sale of milk, cream and ice cream; that a contract was entered into by it with Independent Union of Dairy Employees, which contract by its terms expired October 31st, 1941, unless the Independent Union ceased to represent a majority of the company's employees, which fact was to be determined by the National Labor Relations Board. The contract recognized the Independent Union as the sole bargaining agent of the employees and covered wages, hours and working conditions. The bill further alleged that no strike, labor dispute or controversy existed between the corporate complainant and any of its employees. On February 27th, 1941, under authority of and for the defendant Union, Local No. 680, the places of business of the corporate complainant's customers were picketed by the Union through the individual defendants, not employees of the complainant, who carried signs bearing the following language:

"Alderney Dairy or Newark Milk & Cream Co. is not signed up with the Milk Drivers & Dairy Employees Local Union 680 A. F. of L. Please Co-operate With Us and Buy Only Milk & Cream Delivered by A. F. of L. Union Drivers."

"This Establishment Sells Milk & Cream of the Alderney Dairy or the Newark Milk & Cream Co. which is not signed up with the Milk Drivers & Dairy Employees Union Local 680 A. F. of L. Please Co-operate Buy Only Milk & Cream Delivered by A. F. of L. Union Drivers."

"This Establishment Sells Milk & Cream of the Alderney Dairy or the Newark Milk & Cream Co. which is not signed up with the Milk Drivers & Dairy Employees Union Local 680, A. F. of L. Please do not Patronize Until They Sell Only Milk & Cream Delivered By A. F. of L. Union Drivers."

The picketing was peaceful and took place in front of the places of business of the retail customers of the corporate complainant.

Upon the filing of the bill and affidavits, an order to show cause with intermediate injunction was issued. Upon the return of the order to show cause on March 10th, 1941, the answering affidavits filed by the defendants set forth, among other things, that the activity of the defendant Union in picketing the customers of the corporate complainant was

conducted in order to bring about a "test case;" that the signs carried by the pickets were consciously prepared in order to secure a judicial determination "that both primary and secondary picketing are an exercise of our right of free speech constitutionally guaranteed to us, as established by the decisions of the United States Supreme Court, especially the recent cases of *Milk Wagon Drivers Union of Chicago, Local 753,* v. *Meadowmoor Dairies, Inc., 85 L. Ed. 497; 61 Sup. Ct. Rep. 552,* and *A. F. of L.* v. *Swing, 85 L. Ed. 513; 61 Sup. Ct. Rep. 568."*

In the *Meadowmoor Case* injunction issued restraining all conduct, violent and peaceful. The master to whom the cause had been referred found that the retail customers of the vendors who purchased milk from the dairy company were intimidated by the commission of acts of violence, and his action was affirmed by the high court which justified its decision because the picketing "in connection with or following a series of assaults or destruction of property," had the effect of intimidating the persons in front of whose premises the picketing occurred. Mr. Justice Frankfurter, who wrote the opinion for the United States Supreme Court, declared that the picketing in the case was set in the "background of violence." On the same day (February 10th, 1941) the United States Supreme Court, in an opinion by the same justice, decided the *Swing Case.* In that case "A union of those engaged in what the record describes as beauty work unsuccessfully tried to unionize Swing's beauty parlor. Picketing of the shop followed." The use of false placards in picketing as well as forcible behavior toward Swing's customers was charged. A preliminary injunction was granted but later dissolved and the complaint struck for want of equity. The Illinois Appellate Courts held that the trial court was in error and that the jurisdiction of equity had been properly invoked because (1) there was no dispute between the employer and his immediate employees; (2) the placards were libelous; (3) there were acts of violence. Said Mr. Justice Frankfurter for the United States Supreme Court:

"* * * We are asked to sustain a decree which for purposes of this case asserts as the common law of a state that

there can be no 'peaceful picketing or peaceful persuasion' in relation to any dispute between an employer and a trade union unless the employer's own employees are in controversy with him.

"Such a ban of free communication is inconsistent with the guaranty of freedom of speech. That a state has ample power to regulate the local problems thrown up by modern industry and to preserve the peace is axiomatic. But not even these essential powers are unfettered by the requirements of the Bill of Rights. The scope of the Fourteenth Amendment is not confined by the notion of a particular state regarding the wise limits of an injunction in an industrial dispute, whether those limits be defined by statute or by the judicial organ of the state. A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interest of all engaged in the same industry has become a commonplace. * * * The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ. Communication by such employees of the facts of a dispute, deemed by them to be relevant to their interests, can no more be barred because of concern for the economic interests against which they are seeking to enlist public opinion than could the utterance protected in *Thornhill's Case.* 'Members of a union might, without special statutory authorization by a State, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution.''

The decision of the Illinois Supreme Court was reversed.

Since the return of the order to show cause in this case the legislature of this state enacted *R. S. 2:29-77.1 et seq.; N. J. S. A. 2:29-77.1 et seq.,* which act was approved on March 13th, 1941. The statute (*R. S. 2:29-77.3; N. J. S. A. 2:29-77.3*) forbids the issuance of a temporary or permanent injunction "in any case involving or growing out of a labor dispute, as herein defined, except after hearing the testimony of wit-

nesses in open court (with opportunity for cross-examination) in support of the allegations of a bill of complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of all the following facts by the court or judge or judges thereof:

"(a) That unlawful acts have been committed and are likely to be continued unless restrained;

"(b) That substantial and irreparable injury to complainant's property will follow unless the relief is granted;

"(c) That as to each item of relief granted greater injury will be inflicted upon complaint by the danial thereof than will be inflicted upon defendants by the granting thereof;

"(d) That complainant has no adequate remedy at law."

The act (*R. S. 2:29-77.8; N. J. S. A. 2:29-77.8*) defines a case involving or growing out of a labor dispute and as applied to the admitted facts in this case that section is controlling. It provides that a case is held to involve or to grow out of a labor dispute when it involves persons who are engaged in industry, trade, craft, employment or occupation; or who are members of an affiliated organization of employers or employees; whether such dispute is "(3) between an association or associations of employees and any other association or associations of employees * * *. (c) The term 'labor dispute' includes a controversy concerning terms or conditions of employment, * * * regardless of whether or not the disputants standing (stand) in the proximate relation of employer and employee."

Notice having been served upon the defendants by the complainants for an order fixing a day for hearing in this case, the hearing was held on March 19th, 1941, at which time oral proof was offered by complainants and defendants and the arguments of counsel for the parties heard.

On the day of the hearing Independent Union of Dairy Employees upon application and notice to all parties was by order permitted to intervene as a party complainant and participated in the taking of proofs and the arguments of counsel.

It is shown by the testimony and admitted by the answer of the defendants that there is no strike or labor dispute between the parties nor is it argued by the defendants that the com-

plainant's establishment is a non-union shop or that the complainant company is hostile to union labor. The defendants' answer admits that at least one of the signs constituted secondary boycott. It is shown by the proof and not denied that a large number of complainant's customers have ceased to do business with it and others threatened so to do unless the picketing in front of their premises is discontinued.

Under the statute, however, the picketing of the complainant's customers even if carried on for the avowed purpose of inducing or compelling complainant to accept the demands of the defendant Union and thus bring about the so-called closed show is lawful.

*R. S. 2:29-77.1; N. J. S. A. 2:29-77.1 section* (*k*) declares as a matter of public policy of the State of New Jersey that certain acts are lawful and are "in nowise to constitute a tort or a nuisance" namely (e) giving publicity to the existence of any labor dispute by "patrolling, picketing, without fraud or violence;" (j) "Requiring as a condition of employment that all employees of a particular employer or group of employers shall be members of a particular labor organization."

In the consideration of this case there is, therefore, involved the scope and application of a legislative enactment whose wisdom or lack of wisdom is not a consideration open to judicial inquiry. Clearly the effect of the statute is to regulate the procedure by which an injunction may be obtained and to limit the scope of the relief which may be granted. The statute so interpreted leads me to the conclusion that under the proof and the admissions in this case the complainants are not entitled to relief. The order to show cause will be discharged.